503 S.E.2d 752

**Izora J. ADAMSON, Respondent,**

v.

**RICHLAND COUNTY SCHOOL DISTRICT ONE, Appellant.**

No. 2798.

Court of Appeals of South Carolina.

Heard Jan. 7, 1998.

Filed Feb. 23, 1998.

Refiled May 14, 1998.

---

Kenneth L. Childs, David T. Duff, and Williams F. Halligan, all of Childs & Duff, Columbia, for respondent.

W. Allen Nickles, III, of Gergel, Burnette & Nickels, Columbia, for appellant.

## ORDER

PER CURIAM:

After reviewing the Petition for Rehearing in this case, it is ordered that the opinion heretofore filed, Opinion No. 2798, filed February 23, 1998, be withdrawn and the attached opinion be substituted. The Petition for Rehearing is denied.

**AND IT IS SO ORDERED.**

/s/ Jasper M. Cureton, J.

For The Court

CURETON, Judge:

Richland County School District One (District) appeals the trial court's grant of summary judgment to Izora J. Adamson (Adamson), as well as the denial of the District's motion for summary judgment. We reverse and remand.

## I. ISSUES ON APPEAL

The issues raised on appeal are whether: (1) the trial court had subject matter jurisdiction where Adamson allegedly failed to exhaust her administrative remedies; (2) substantial compliance by the district with S.C.Code Ann. § 59–25–410 (1990) served as an effective nonrenewal of Adamson's contract; and (3) the District is estopped from relying on Adamson's prior deficient performance and noncompliance with school policies as a basis for terminating her employment.

## II. FACTS

Adamson was employed by the District as an elementary school teacher for the school years 1990–91 through 1994–95.

As a continuing contract teacher, Adamson was entitled to all rights and benefits under the South Carolina Teacher Employment and Dismissal Act (Act), S.C.Code Ann. §§ 59–25–410 to 530 (1990 & Supp.1997). The District failed to meet the April 15th statutory deadline for providing Adamson notice in writing concerning her employment for the 1995–96 school year.

The District's first written notice of nonrenewal for the 1995–96 school year is dated April 18, 1995. This untimely notification letter stated, *inter alia:*

> The grounds upon which this action is based includes [sic] serious and on-going concerns with your performance, primarily in the areas of planning, instruction, classroom management and recordkeeping. It is my understanding that for the past two consecutive years you received letters of concern with your contracts;, you were placed on improvement plans and you were formally evaluated. Additionally, you have been given direct, intensive assistance to bring about the necessary improvements and address the administration's concerns. Nevertheless, sufficient progress has not been noted and I have no alternative but to conclude that the non-renewal of your employment contract is warranted, pursuant to S.C.Code Ann. § 59–25–440.

In response to the April 18th letter, Adamson asserted her contract had been renewed by operation of law because of the untimeliness of the notice of nonrenewal.[1] Thereafter, on June 21, 1995, the District issued Adamson a contract for the 1995–96 school year. In the accompanying letter, however, the District's Superintendent suspended Adamson effective immediately and advised Adamson he would recommend the board terminate her. The Superintendent's recommendation was based exclusively on Adamson's performance as a teacher prior to the April 18, 1995 notice. Adamson was permitted to fulfill the terms of her 1994–95 contract.

On June 28, 1995, Adamson filed this declaratory action and requested an injunction to prevent the District from suspending or terminating her. The District filed a motion to dismiss

---

1. South Carolina Code Ann. § 59–25–410 (1990) requires a school board to notify a teacher of its election to not renew the teacher's contract by April 15th of each year, and upon failure to give such notice, the teacher is deemed "reemployed for the ensuing year."

based on the court's lack of subject matter jurisdiction and Adamson's failure to exhaust her administrative remedies. The trial court denied this motion. Adamson then filed a motion for summary judgment. The District in turn filed a motion for summary judgment based on the same grounds stated in its motion to dismiss. It further asked the trial court for a stay of the proceedings to permit it to hold an administrative hearing. The trial court granted Adamson's motion and denied the District's motions.

## III. STANDARD OF REVIEW

"Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Tupper v. Dorchester County,* 326 S.C. 318, 325, 487 S.E.2d 187, 191 (1997). All ambiguities, conclusions, and inferences arising from the evidence must be construed most strongly against the moving party. *Baugus v. Wessinger,* 303 S.C. 412, 401 S.E.2d 169 (1991). "Summary judgment is proper where plain, palpable, and indisputable facts exist on which reasonable minds cannot differ." *Rothrock v. Copeland,* 305 S.C. 402, 405, 409 S.E.2d 366, 368 (1991).

## IV. ARGUMENTS

### Subject Matter Jurisdiction and Exhaustion of Administrative Remedies

The District argues the circuit court did not have subject matter jurisdiction to entertain Adamson's lawsuit and that her sole remedy was to await a hearing from the board. The District also argues that because Adamson filed suit before a hearing could be scheduled, she did not exhaust her administrative remedies and the circuit court lacked subject matter jurisdiction to grant her relief.

While acknowledging there is no clear precedent with respect to the question of whether Adamson's failure to pursue her administrative remedies under the Act deprived the circuit court of subject matter jurisdiction, the District cites the cases of *Byrd v. Irmo High School,* 321 S.C. 426, 468 S.E.2d 861 (1996) and *Andrews v. Dorchester County School Dist. No. 2,* 292 S.C. 392, 356 S.E.2d 439 (Ct.App.1987) as supportive of its

position. In both *Andrews* and *Byrd* the appellants sought to appeal *under applicable statutes* the failure of the school boards to review the decisions of school officials. Our appellate courts concluded the circuit court did not have subject matter jurisdiction under the Act in either case because in *Andrews* there was no board order to appeal, and in *Byrd,* the statute did not permit the appeal of a ten-day school suspension of a pupil. Adamson seeks to distinguish this case by noting that here she seeks a declaratory judgment whether the District board has authority to even consider the Superintendent's recommendation to terminate her in view of the fact that the board issued her a new contract in June 1995.

The general rule is that administrative remedies must be exhausted absent circumstances supporting an exception to application of the general rule. *Andrews Bearing Corp. v. Brady,* 261 S.C. 533, 201 S.E.2d 241 (1973); *Ex parte Allstate Ins. Co.,* 248 S.C. 550, 151 S.E.2d 849 (1966). Whether administrative remedies must be exhausted is a matter within the trial judge's sound discretion and his decision will not be disturbed on appeal absent an abuse thereof. *Garris v. Governing Board of South Carolina Reinsurance Facility,* 319 S.C. 388, 461 S.E.2d 819 (1995); *Hyde v. South Carolina Dep't of Mental Health,* 314 S.C. 207, 442 S.E.2d 582 (1994); *Stanton v. Town of Pawley's Island,* 309 S.C. 126, 420 S.E.2d 502 (1992). An abuse of discretion occurs when: (1) a judge's ruling has no evidentiary support; or (2) the judge makes an error of law. *Gooding v. St. Francis Xavier Hosp.,* 326 S.C. 248, 487 S.E.2d 596 (1997).

The requirement of exhaustion of administrative remedies vis-a-vis a court's authority to hear a case involving an agency, where a plaintiff has not asked the agency for relief, is often confused. The doctrine of exhaustion of administrative remedies is generally considered a rule of "policy, convenience and discretion, rather than one of law, and is not jurisdictional." *Vaught v. Waites,* 300 S.C. 201, 205, 387 S.E.2d 91, 93 (Ct.App. 1989) (citing *Andrews Bearing Corp.,* 261 S.C. 533, 536, 201 S.E.2d 241, 243); *see also Ex parte Allstate Ins. Co.,* 248 S.C. 550, 151 S.E.2d 849 (1966). The *Vaught* court, however, noted it expressed "no opinion whether failure to exhaust administrative remedies is jurisdictional under the Administrative Procedures Act. *See* D. Shipley, *South Carolina Administra-*

*tive Law* at 7–42 (1983)." *Vaught,* 300 S.C. at 205 n. 2, 387 S.E.2d at 93 n. 2. Professor Shipley states in his work:

It must be noted that the APA and the Code's general Declaratory Judgment Act arguably serve different purposes. The Code expressly states that the Declaratory Judgment Act is "remedial." Its purpose is to "settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations." The APA is procedural in that it sets forth a uniform method by which parties may participate in administrative proceedings and seek review of an agency's action. The use of one form of review should in no way preclude or affect the use of the other. (Footnote references omitted).

*Id.* at 7–17. This view is arguably supported by S.C.Code Ann. § 1–23–380 (1986 & Supp.1997), which provides that a party who has exhausted all administrative remedies may seek judicial review of a final agency decision, but further states:

This section does not limit utilization of or the scope of judicial review available under other means of review, redress, relief or trial de novo provided by law. A preliminary, procedural, or intermediate agency action or ruling is immediately reviewable if review of the final agency decision would not provide an adequate remedy.

Adamson argues the circuit court was correct in assuming jurisdiction of the case because to permit the District to conduct a hearing on her fitness to teach would permit it to "circumvent [her] right under South Carolina Code § 59–25–410 by issuing a contract for the 1995–1996 school year and simultaneously suspending [her] employment. . . ." Adamson argues that there are no factual determinations to be made by the District; rather the question is one of law regarding the authority of the District to terminate her after issuance of a contract of employment. She cites *Ex parte Allstate,* 248 S.C. 550, 151 S.E.2d 849, as authority for her position. The District concedes that there are exceptions to the requirement of exhaustion of administrative remedies and catalogs four instances where exhaustion is not required. One such category is dealt with in *Ex parte Allstate.* There, Allstate sought an injunction to prevent the Insurance Commissioner from investigating its lobbying efforts with the legislature. The Supreme Court affirmed the county court's grant of the

injunction, and held the actions of Allstate in opposing proposed legislation "were not activities 'with respect to the business of insurance,' within the meaning of [the section now codified at S.C.Code Ann. § 38–57–50 (1989)], which the Insurance Commissioner is authorized to regulate or investigate." *Id.* at 565, 151 S.E.2d at 854. The court concluded the Commissioner was clearly without authority to investigate the questioned activities and, thus, the issue involved was "solely one of law as to the statutory authority or jurisdiction of the Commissioner." *Id.* at 567, 151 S.E.2d at 855.

In the case of *Betterson v. Stewart,* 238 S.C. 574, 121 S.E.2d 102 (1961), our Supreme Court sustained the trial court's dismissal of a cause of action which sought discharge of Stewart as a school principal, upon the ground the court was without jurisdiction in the matter until the exhaustion of administrative remedies provided in such cases. In *Betterson,* the plaintiffs, parents of children attending Stewart's school, set forth four causes of action: (1) to require an accounting for funds raised by the plaintiffs for the school; (2) for a judgment against Stewart for the funds found to have been misappropriated; (3) to enjoin the further maintenance of the fund as such was not authorized by law; and (4) to enjoin the school board from continuing to employ Stewart on the ground of his alleged unfitness. The Supreme Court concluded the trial court had jurisdiction to hear the first and second causes of action, but did not have jurisdiction to hear the third and fourth causes of action.

A more recent case with procedural similarities to the instant case is that of *Garris v. Governing Board of South Carolina Reinsurance Facility,* 319 S.C. 388, 461 S.E.2d 819 (1995). Garris, a licensed insurance agent, was issued a notice of a hearing by the board to revoke his status as a designated producer for the facility. Garris filed suit in circuit court seeking declaratory and injunctive relief on the ground that proceeding with the hearing would violate the Administrative Procedures Act. The board filed a motion to dismiss. The circuit court denied Garris's motion for injunction and granted the board's motion to dismiss, finding all issues should be addressed administratively. The Supreme Court affirmed the trial court's requirement that Garris seek relief from the board first, and stated "declaratory relief will ordinarily be

refused where another remedy will be more effective or appropriate under the circumstances." *Id.* at 390, 461 S.E.2d at 821.

Regardless of how Adamson characterizes the instant lawsuit, it seems clear to us that she seeks a determination of her rights under the Act. The South Carolina Legislature has granted broad authority to school boards to administer the Act. Under § 59–19–90(2) of the Act, school boards are given clear authority to discharge teachers. *Barr v. Board of Trustees*, 319 S.C. 522, 462 S.E.2d 316 (Ct.App.1995). South Carolina Code Ann. § 59–25–480 (1990) provides that decisions of the District board shall be final unless appealed within thirty days to the circuit court. S.C.Code Ann. § 1–23–380(6) (Supp.1997) gives the circuit court authority to reverse an agency decision "made upon unlawful procedure" or in excess of "statutory authority."

Under the unique facts of this case, there has been no final board action; rather, there is a suspension by and a recommendation from the Superintendent that Adamson be terminated. The board is free to reject the Superintendent's recommendation for dismissal, lift his suspension and reinstate Adamson without loss of compensation, in which case Adamson would have no reason to complain. We hold that inasmuch as Adamson seeks redress under the Act, she must follow the review route set forth in the Act. Because there is no final board order, Adamson finds herself in the same posture as Andrews in *Andrews v. Dorchester County School District Two*, 292 S.C. 392, 356 S.E.2d 439 (Ct.App.1987). Here, as in *Andrews*, there being no order for the circuit court to review, the court lacked subject matter jurisdiction over the case. Adamson's remedy is to seek review from the District board. Moreover, at a hearing before the District's board, Adamson is free to interpose "any and all defenses" she has pertaining to the suspension and dismissal recommendation, whether those defenses relate to procedural or substantive issues. *See* S.C.Code Ann. § 59–25–470 (1990).

In her petition for rehearing, Adamson continues to argue the trial court did not abuse its discretion in not first requiring the board to act on her claim inasmuch as the board concedes there is no evidence of deficient performance after the issu-

ance of the 1995–1996 contract. Of course, having found the circuit court did not have jurisdiction over the matter until either Adamson's suspension was sustained by the board or the board dismissed her, we need not reach that issue. Nevertheless, we note that the case of *Roberson v. Board of Educ.*, 80 N.M. 672, 459 P.2d 834, 836 (1969), Adamson cites to support her claim that evidence of her performance prior to April 18, 1995 could not be utilized by the board to terminate her, is more supportive of the board's position than hers. In that case, in interpreting New Mexico's tenure statute which provided "no teacher having a written contract shall be discharged except upon good cause …", the court made a distinction between a termination for prior "objectionable conduct" known to the school board before it renews a contract, and the discharge of a tenured teacher after renewal of a contract for "inefficiency." The court concluded that because the prior objectionable conduct was known to the board before it renewed Roberson's contract, that conduct could not supply the basis for the cancellation of a contract for the future. On the other hand, it stated that where the charge is inefficiency, evidence of the teacher's prior conduct in the areas of teaching and class management would be admissible in a board proceeding to discharge for that reason. The court quoted from the Minnesota case of *Cochrane v. Peterson*, 208 Minn. 361, 294 N.W. 203 (1940) as follows:

Where teachers have attained permanent employment under the tenure act, there is no reason why, upon a charge of inefficiency, the past conduct as a teacher should not be open to scrutiny. Efficiency in teaching and discipline is required of teachers in public schools, and lack thereof is recognized by § 2935–6(c) as grounds for discharge. That the authorities have been patient with a teacher and have tried him or her in different positions in the hope of finding some place where efficiency was manifested should not defeat the right to discharge such teacher if efficiency nevertheless was not attained.

*Id.*, 294 N.W. at 205.

Our Supreme Court has said that the timing of a termination is solely within the discretion of the school board and the fact that the board allows a teacher to serve out the remainder of a school year gives the teacher no cause to allege

noncompliance with the Teacher Employment and Dismissal Act. *Adams v. Clarendon County School District,* 270 S.C. 266, 241 S.E.2d 897 (1978). The court further stated in *Adams* that § 59-25-430 expressly authorizes dismissal "at any time," subject, of course to the rights of notice and a hearing. Here, it seems clear to us that, unlike the *Roberson v. Board of Educ.* case, the conduct upon which the superintendent asked the board to dismiss Adamson relates to inefficiency or incompetence to teach, and not to "particular conduct deemed objectionable by the school authorities" of which they had notice before the new contract was tendered to Adamson. As a final note, even in *Roberson,* the school board was afforded the opportunity to make the initial decision whether the teacher's conduct warranted dismissal.

We reverse the trial court's order which requires the District to issue Adamson a contract for the 1995–96 school year, and to reinstate her along with back pay and other benefits. We remand to the trial court to enter an order dismissing Adamson's complaint and the District's counterclaim.

The order of the trial court is

**REVERSED AND REMANDED.**

HOWELL, C.J., and HOWARD, J., concur.